IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MELISSA PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15-cv-04229-NKL |
| | ) | |
| CAROLYN W. COLVIN | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Melissa Payne seeks review of the Administrative Law Judge's decision denying her application for Social Security benefits. For the following reasons, the decision is reversed, and the case is remanded for reconsideration.

**I.     Background**

**A. Payne's Medical History**

Payne seeks Social Security benefits for disabilities beginning in January 2013. On April 4, 2013, Payne was admitted to the hospital with abdominal pain and transaminitis. She was transferred to the Intensive Care Unit ("ICU"), where she remained until April 23. She was discharged on April 29 with diagnoses of abdominal pain; chronic Hepatitis B and Hepatitis C with cirrhosis; electrolyte imbalance; fluid overload; history of hypokalemia; healthcare-associated pneumonia; hyperbilirubinemia; and physical deconditioning. She was prescribed Lasix and potassium chloride and was put on home oxygen.

After discharge, Payne went to see Dr. James Koller and Dr. Jad Omran at the General Medicine Clinic at MU Health Care on May 13, 2013. She reported that Combivent and Symbicort were helping with her breathing. The next day she reported to Dr. Yuji Oba that she was experiencing symptoms of dyspnea and productive cough. On May 28, Payne went to see Dr. Ghassan Hammoud for treatment of her Hepatitis with cirrhosis. She reported that she was not using oxygen and Dr. Hammoud noted that Payne's symptoms were doing well.

On June 17, Payne returned to Dr. Koller and Dr. Omran, reporting numbness and tingling in her lower extremities as well as occasional dizziness and lightheadedness. Dr. Koller noted that Payne was absent sensation in her lower extremities. The same day, Dr. Omran completed a medical source statement for Payne, which noted that she could lift and/or carry 10 pounds frequently and five pounds occasionally; stand and/or walk 15 minutes continuously and one hour total throughout an eight-hour day; sit 15 minutes continuously and one hour total throughout an eight-hour day; was limited in her ability to push and/or pull; should never climb; and occasionally balance, stoop, kneel, crouch, crawl, reach, handle, finger, and feel. He also opined that Payne should avoid moderate exposure to weather, wetness, humidity, dust, and fumes and lie down or recline every 30 minutes to alleviate symptoms. The doctor noted that Payne's foot pain and fatigue limited her physical activities.

In July 2013 Payne went to see Dr. Divya Gupta and Dr. Orman and reported that she was smoking half a pack of cigarettes per day, had partial improvement of her neuropathy with Gabapentin, but experienced shooting pain in her legs which prevented

her from sleeping.  Her dose of Gabapentin was increased.  Over the next month and a half she went to the emergency room twice complaining of bilateral foot pain.

Payne reported to Family Health once in September 2013 and once in October 2013 to receive treatment for her COPD, leg and muscle pain, and symptoms of dyspnea.  She was started on Spiriva and then switched to Tudorza.  She was also advised to use Zanaflex as needed.  On November 20 Payne reported that her neck pain was a seven on a scale of one to ten.

On November 19, Dr. Hammoud noted that Payne's cirrhosis was well compensated and Payne reported that she was interested in Hepatitis C treatment.  An abdominal ultrasound in December showed hepatic steatosis.  On December 13, Payne reported that her neck pain was improved and her neuropathy was stable, but she continued to experience musculoskeletal pain aggravated by walking and standing.  She was assessed with myofascial syndrome.

On January 27, 2014, Payne presented to Dr. Joel Jeffries for treatment of her neck pain.  Dr. Jeffries noted that Payne's cervical range of motion was diminished in all planes and she had hypersensitive tenderness.  An MRI showed spondylosis and osteophyte at C4-5 resulting in a neural foramina encroachment on the right.  The doctor recommended cervical epidural steroid injections.  Payne received a right C4-7 medial branch block with lidocaine in February, but Payne later reported no improvement in her neck pain with the treatment.

On May 28, Payne presented to the emergency room with bilateral neuropathic foot pain.  On July 10, she went back to the emergency room due to worsening shortness

of breath. The attending physician noted COPD with acute exacerbation and prescribed Prednisone. On July 30, she was admitted to the hospital with shortness of breath and while in the hospital acquired pneumonia. On August 4 she was discharged on home oxygen.

### B. ALJ Decision

The Administrative Law Judge ("ALJ") denied Payne's request for disability benefits, concluding that she had the Residual Functional Capacity ("RFC") to engage in substantial gainful activity. The ALJ concluded that despite Payne's severe impairments of COPD, Hepatitis B and C with cirrhosis, cervical spondylosis, and peripheral neuropathy of the lower extremities, she retained the following RFC:

> [T]o lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand or walk for up to 6 hours and sit for up to 6 hours total in an 8-hour workday. She must be allowed to alternate sitting and standing at least every 30 minutes. She can occasionally climb ramps or stairs, but never climb ladders, ropes, scaffolds or balance. She can occasionally kneel, crouch, and crawl. She can frequently handle and finger with the right. She must avoid exposure to extreme cold. She may be exposed to no more than occasional humidity. She must avoid excessive vibration. She may be exposed to no more than occasional irritants. She must avoid operational control of moving machinery, unprotected heights and hazardous machinery.

[Tr. 18]. A vocational expert testified that with this RFC, an individual would be able to perform the requirements of occupations such as an office helper, photo copy machine operator, or shipping receiving weigher.

In determining the RFC, the ALJ considered the medical evidence of the record, as well as Payne's testimony at the administrative hearing regarding the extent of her

symptoms. At the administrative hearing, Payne testified that she quit her part-time job in 2014 because she had been physically unable to perform the work, which involved janitorial duties. She reported difficulty with standing, sitting for long periods of time, stairs, and stress. She stated that she could not get out of bed two or three days a week due to pain and that her Hepatitis C caused vomiting, nausea, and weight loss.

Payne testified that she is capable of doing light work in her house, but cannot make the bed. She stated that she can stand and sit for 30 minutes at a time and is supposed to elevate her legs when sitting down. She stated that she can lift no more than 10 pounds and that sometimes she drops things and cannot pick up small objects.

## II. Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Payne argues that there is insufficient evidence in the record to support the RFC determination because the ALJ dismissed the only opinion in the record from the medical source, and erred in evaluating Payne's credibility.

5

The record contains one medical opinion on Payne's physical functional capacity. This opinion was rendered by Dr. Omran in June 2013. The ALJ gave Dr. Omran's opinion little weight, concluding that it was inconsistent with the evidence of the record indicating that Payne's symptoms have improved with Lyrica and Payne's own testimony that she is able to sit for 30 minutes at a time, rather the 15 minutes that Dr. Omran opined. The ALJ also concluded that Dr. Omran's opinion that Payne could work only two hours was inconsistent with Payne's testimony that she would be willing to perform a job through Vocational Rehabilitation if it could accommodate her limitations. Finally, the ALJ noted that the record contained few treatment records from Dr. Omran which reduced the credibility of his assessment.

Payne does not argue that the ALJ erred in giving little weight to Dr. Omran's opinion. She argues instead that absent this opinion, the record contains no evidence to support the RFC determination.

When the ALJ determines a claimant's RFC, she "is not limited to considering medical evidence exclusively," and should base the determination on all of the evidence of the record. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). However, the RFC is a medical question and must be supported by at least some medical evidence. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010).

While the ALJ is not required to rely on specific medical opinions in assessing a claimant's RFC, and the ALJ does not in all circumstances need to acquire additional medical opinions to evaluate a record containing conflicting information, in this instance the record was insufficient for the ALJ to make a determination supported by substantial

evidence, and the ALJ was therefore required to seek additional medical evidence prior to denying Payne's disability request. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("[T]here is no *medical* evidence about how Nevland's impairments affect his ability to function now. . . . In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record."). The discretion afforded the ALJ in making the RFC determination does not mean that the ALJ has no obligation to develop the record where ambiguities arise regarding a claimant's capacity. *See Leath v. Colvin*, 2013 WL 3215215, at *2 (W.D. Mo. June 24, 2013); *Taylor v. Astrue*, 2012 WL 6953117, at *11 (E.D. Mo. Nov. 9, 2012).

Having rejected the sole medical opinion in the record, the ALJ relied on her own conclusions from Payne's medical records to reach the opinion that Payne has the functional capacity to maintain substantial gainful employment. However, the ALJ is not a doctor and "may not draw upon [her] own inferences from medical reports." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (quotation omitted); *see also McNertney v. Astrue*, 2011 WL 24116618, at *5 (W.D. Mo. June 13, 2011).

There is no evidence to support the ALJ's conclusion that Payne is capable of performing a reduced range of light work and standing or walking for up to six hours per day. The record reveals that Payne suffers from ongoing dyspnea, requires periodic oxygen treatments, and has pain and numbness in her feet, legs, and neck. It also shows that since the alleged onset date, Payne has been admitted to the ICU, experienced other hospital admissions which lasted numerous days, and received steroid injections due to her neck pain and ongoing modifications to her medications to manage the symptoms

from her severe impairments. Payne also testified that she quit her part-time job in 2014 because she was physically unable to perform it, cannot make her bed, cannot stand or sit for more than 30 minutes at a time, and cannot get out of bed two to three days a week due to pain. While the ALJ discredited Payne's testimony regarding her limitations, nothing in the record supports the ALJ's conclusion that Payne is capable of carrying 20 pounds or standing or walking for up to 6 hours in a work day. Nothing in the record indicates that Payne engages in such movement currently, or that she would be capable of doing so in the context of a job. The doctors' treatment notes that Payne experiences periodic numbness in her legs and musculoskeletal pain aggravated by walking and standing seem to contradict the ALJ's conclusion that Payne is capable of remaining on her feet for six hours of an eight hour work day, even alternating with sitting every half hour.

In the absence of any medical or testimonial evidence from Payne to support the RFC, the Court cannot say that the ALJ's decision is supported by substantial evidence. *See Wadsworth v. Astrue*, 2011 WL 900993 (W.D. Mo. March 15, 2011) (reversing and remanding the ALJ's decision when the ALJ discounted the treating physician's opinion and the record contained no other medical evidence to support a determination as to the claimant's RFC). Therefore, remand is necessary for the ALJ to obtain evidence on which to base the RFC.

On remand the ALJ should also reconsider Payne's credibility in light of the any new evidence.[1] *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (noting that the ALJ is to consider the entire record including the claimant's medical records, third party statements, the claimant's statements, and factors including (1) the claimant's activities of daily living; (2) the duration, frequency, and intensity of pain and other symptoms; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions in assessing the claimant's credibility).

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is reversed, and the case is remanded for further consideration.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 8, 2016
Jefferson City, Missouri

---

[1] The ALJ concluded that Payne's description of the extent of her symptoms was not credible in part because she is able to engage in light cleaning of her home and stated that she would work if Vocational Rehabilitation had a job that could accommodate her limitations. However, an ability to complete household chores is not necessarily indicative of an ability to sustain substantial gainful employment. *See Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998). Moreover, Payne's willingness to work a job which accommodates for her limitations does not indicate that Payne is necessarily capable of working if the evidence indicates that no job could accommodate her limitations.